# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

AMY ANN ROZEBOOM,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C13-4116-MWB

**REPORT AND
RECOMMENDATION**

---

Plaintiff Amy Ann Rozeboom seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Rozeboom contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be reversed and remanded for further proceedings.

## I. BACKGROUND

Rozeboom was born in 1977 and has a master's degree in accounting. AR 33, 34. She has past relevant work as an accountant, office manager, bookkeeper and cake decorator. AR 20, 62. She filed for SSI on January 6, 2011, alleging disability beginning December 3, 2006. AR 12, 137. Her claim was denied initially and on reconsideration. AR 12. She requested a hearing before an Administrative Law Judge (ALJ) and on September 13, 2012, ALJ Michael J. Kopicki held a hearing during which Rozeboom and a vocational expert (VE) testified. AR 28-69.

On September 28, 2012, the ALJ issued a decision finding Rozeboom was not disabled since January 6, 2011, the date her application was filed. AR 12-22. Rozeboom sought review of this decision by the Appeals Council, which denied review on November 1, 2013. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. § 416.1481.

On December 16, 2013, Rozeboom commenced an action in this court seeking review of the Commissioner's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant

work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III.    ALJ'S FINDINGS

The ALJ made the following findings:

(1)    The claimant has not engaged in substantial gainful activity since January 6, 2011, the application date (20 CFR 416.971 *et seq.*).

(2)    The claimant has the following severe impairments: generalized anxiety disorder, panic disorder with agoraphobia, bipolar disorder, type II, attention deficit hyperactivity disorder, and an adjustment disorder (20 CFR 416.920(c)).

(3)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(4)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:   the claimant is able to understand, remember, and carry out simple, detailed, and complex instructions but must do so in a setting involving no more than occasional public contact and no more than superficial interaction with coworkers and supervisors.

(5)    The claimant is capable of performing past relevant work as Accountant, Bookkeeper, or Cake Decorator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.  (20 CFR 416.965).

(6)    The claimant has not been under a "disability," as defined in the Social Security Act, since January 6, 2011, the date the application was filed (20 CFR 416.920(f)).

AR 14-21.

## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645.  The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).  The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188

(8th Cir. 1994)).  Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)).  This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)).  The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.    DISCUSSION

Rozeboom raises the following arguments in contending that the ALJ's decision is not supported by substantial evidence:

(1)    The ALJ Erred By Giving Little Or No Weight To The Treating Source Opinions, Examining Source Opinions, The State Agency Opinions, And The Third Party Statement, Without Giving Good Reasons.

(2)    The ALJ Erred By Relying On His Own Perceived Medical Expertise To Evaluate Medical Issues That Are Best Left To Medical Experts.

(3)    The Record Overwhelmingly Demonstrates That Plaintiff Is Disabled.

I will address the first two arguments together before addressing the third.

### A.    Does Substantial Evidence Support the ALJ's Formulation of Rozeboom's RFC?

Rozeboom notes that the only limitation of any kind the ALJ included in the RFC is that Rozeboom must work "in a setting involving no more than occasional public

contact and no more than superficial interaction with coworkers and supervisors." AR 16. Rozeboom contends that all of the medical opinions of record, along with a statement provided by Rozeboom's husband, reflect greater limitations than this sole, "interaction" limitation.

### 1. Medical Evidence

#### a. Applicable Standards

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting 20 C.F.R. § 404.1527(b), which is identical to 20 C.F.R. § 416.927(b)). "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Other relevant evidence includes medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

*Acceptable Medical Source Opinions.* Medical opinions can come from a treating source, an examining source or a non-treating, non-examining source (typically a state agency medical consultant who issues an opinion based on a review of medical records). Medical opinions from treating physicians are entitled to substantial weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). Nonetheless, if the ALJ finds that a treating physician's medical opinion as to the nature and severity of the claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] record, [the ALJ] will give it controlling weight." 20 C.F.R. § 416.927(c)(2). "When an ALJ

discounts a treating physician's opinion, he should give good reasons for doing so." *Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010). Note, however, that a treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

At the other end of the medical-opinion spectrum are opinions from non-treating, non-examining sources: "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). This does not mean, however, that such opinions are to be disregarded. Indeed, "an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (internal quotations and citations omitted). Unless a treating source's opinion is given controlling weight, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. § 416.927(e)(2)(ii).

In the middle of the spectrum are opinions from consultative examiners who are not treating sources but who examined the claimant for purposes of forming a medical opinion. Normally, the opinion of a one-time consultative examiner will not constitute substantial evidence, especially when contradicted by a treating physician's opinion. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000).

Ultimately, it is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions. *See Finch*, 547 F.3d at 936 ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (citing *Bentley v. Shalala*, 52 F.3d 784, 785-87 (8th Cir. 1995)).

***Other Opinion Evidence.*** Opinion evidence may also come from health care providers who do not fall within the Commissioner's definition of an "acceptable medical source," such as nurse practitioners and clinical social workers.[1] Social Security Ruling 06-03p nonetheless requires the ALJ to give consideration to such opinions. That ruling includes the following statements:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. *See* 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. *See* 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. *See* 20 CFR 404.1527(d) and 416.927(d).

> \* \* \*

> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:

> - Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists;

> \* \* \*

> Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical

---

[1] That definition identifies various "acceptable medical sources" who can "provide evidence to establish an impairment." *See* 20 C.F.R. § 416.913(a). Nurse practitioners and social workers are not included. *Id.*

sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity.

\* \* \*

Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from "acceptable medical sources," including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions.

\* \* \*

The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000, "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*See* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Among other things, this ruling means a social worker's opinion is not a "medical opinion," is not entitled to controlling weight and cannot establish *the existence of* a medically-determinable impairment. However, that opinion *can* be used as evidence of the severity of an impairment and how the impairment affects the individual's ability to function. An ALJ must evaluate the opinion with reference to the same factors that apply to other medical sources, including:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and
- Any other factors that tend to support or refute the opinion.

*See* 20 C.F.R. § 416.927(c). "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

**The ALJ's Duty.** Obviously, medical opinions and other forms of medical evidence do not magically appear on the ALJ's desk in advance of a hearing. Instead, the ALJ has a duty to fully and fairly develop the record, even when the claimant is represented by counsel. *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citing *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983)). This duty includes "arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." 20 C.F.R. § 416.945(a)(3). "Because the social security disability hearing is non-adversarial … the ALJ's duty to develop the record exists independent of the claimant's burden in the case." *Stormo,* 377 F.3d at 806 (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)).

### b.    The Record

The record contains evidence from Jennifer Crew, LISW, Rozeboom's therapist, Daniel Gillette, M.D., Rozeboom's treating psychiatrist, Phil McLeod, Ph.D., a psychologist who conducted testing in November 2010, and two state agency consultants who reviewed records but did not examine Rozeboom: Aaron Quinn, Ph.D., and Myrna Tashner, Ed.D.

**Ms. Crew.** Rozeboom saw Ms. Crew for psychotherapy on numerous occasions during 2011 and 2012. AR 346-52, 354-63, 370-73, 377-83, 387-94, 398-409. On January 21, 2011, Ms. Crew wrote a letter confirming Rozeboom was being treated for mental illness and stating: "I do not recommend she work outside her home due to her present condition." AR 285. Ms. Crew completed a medical source statement dated September 11, 2012, indicating that Rozeboom was unable to (a) maintain attention for extended periods of 2 hour segments, (b) maintain regular attendance, (c) complete a normal workday and workweek, (d) accept instructions and respond to criticism from supervisors and (e) respond to changes in a routine work setting, in regular, competitive employment. AR 422-28. Ms. Crew stated that Rozeboom could function, at best, in a private workspace or when left "completely alone." AR 427. She also predicted that Rozeboom would be absent from work about four times a month. AR 425.

**Dr. Gillette.** Like Ms. Crew, Dr. Gillette is affiliated with Associates for Psychiatric Services, P.C. AR 342-44, 346. While he did not complete a written opinion, the record includes his treatment notes reflecting more than twenty visits with Rozeboom between January 27, 2011, and June 21, 2012. AR 316-44, 353, 358-60, 364-69, 374-76, 384-86, 395-97, 410-12. After evaluating Rozeboom on January 27, 2011, Dr. Gillette diagnosed panic disorder with agoraphobia, major depressive disorder – moderate, and dysthymia. AR 343. He also listed a rule-out diagnosis of generalized anxiety disorder. *Id.* He assigned a Global Assessment of Functioning (GAF) score[2] of 58 "with serious symptoms and difficulty functioning." *Id.*

---

[2] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM–IV). A GAF score of 51 to 60 indicates an individual who has "[m]oderate symptoms (*e.g.*, flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *Id.*

During the rest of 2011, Dr. Gillette saw Rozeboom on a regular basis while also noting that she was receiving psychotherapy from Ms. Crew. *See, e.g.,* AR 317, 334, 340. On February 23, 2011, he added a provisional diagnosis of bipolar disorder, Type II. AR 336. On March 4, 2011, he removed the "provisional" label. AR 334. His treatment notes, particularly during 2011, reflect that Rozeboom's mental condition was unstable, seeming to improve at some points, only to deteriorate soon after, and that Dr. Gillette regularly made adjustments to her medication. *See, e.g.,* AR 316-18, 323-24, 330-31, 334-35, 364-69, 374-75. Dr. Gillette's final treatment note of record, dated June 21, 2012, reflects that he had changed her bipolar disorder diagnosis from Type II to Type I.[3] AR 410. At that time, he noted that she was "doing well" and was planning to start taking additional college classes the following month. AR 411.

**Dr. McLeod.** Rozeboom was evaluated by Dr. McLeod on November 2 and 16, 2010. AR 286-87. Dr. McLeod administered various psychological tests, including the Wechsler Adult Intelligence Scale-3, the Shipley Institute of Living Scale and the Minnesota Multiphasic Personal Inventory-2 (MMPI). AR 286. Based on the results of the Wechsler test, he concluded that Rozeboom has above-average intelligence, working memory and processing speed. *Id.* The Shipley test, which measures "old learning" and "new thinking that requires more flexibility of a conceptual thinking nature," resulted in mid-average scores. *Id.*

As for the MMPI, Dr. McLeod found that Rozeboom "tended to overrespond in a marked fashion to many of the stimulus items," meaning "the inventory is of questionably validity." *Id.* Nonetheless, he determined that some findings could be made, including that Rozeboom "is an individual who draws very heavily upon repression and denial and probably does have something of a masked depression together with severe

---

[3] The absence of manic episodes is the distinguishing factor between Type I and Type II: "Bipolar II Disorder is distinguished from Bipolar I Disorder by the presence of one or more Manic or Mixed Episodes in the latter." DSM-IV at 396. One of the diagnostic criteria for Bipolar II Disorder is that "[t]here has never been a Manic Episode or a Mixed Episode." *Id.* at 397.

anxiety." *Id.* Dr. McLeod concluded that Rozeboom has "generalized anxiety disorder along with the panic disorder without agoraphobia and a dysthymic depression diagnosis." *Id.* He also noted that "some schizoid personality features may also be considered in the overall working diagnosis." AR 287.

**Dr. Quinn and Dr. Tashner.** Dr. Quinn reviewed records and completed a mental RFC assessment on March 15, 2011. AR 311-13. He concluded that Rozeboom was moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods and to work in coordination with or proximity to others without being distracted. AR 311. He also found that Rozeboom was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 312. He further noted moderate limits in Rozeboom's ability to interact appropriately with the general public, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and to respond appropriately to changes in the work setting. *Id.* In the narrative portion of his assessment, Dr. Quinn stated that Rozeboom "is expected to have difficulties with extended attention/concentration, detailed instructions, pace/persistence, interpersonal functioning and change." AR 313-14.

On July 29, 2011, Dr. Tashner issued a case analysis based on Rozeboom's request for reconsideration of the state agency's determination. AR 345. Dr. Tashner noted that Rozeboom had, by then, been diagnosed with bipolar disorder and ADHD. *Id.* Nonetheless, Dr. Tashner found that evidence did not support limitations beyond those noted by Dr. Quinn. *Id.* As such, she affirmed Dr. Quinn's mental RFC assessment as written. *Id.*

### c. *Discussion of the ALJ's Findings*

The ALJ determined that Ms. Crew's opinion was entitled to little weight for the following reasons:

> A social worker does not fit the definition of an "acceptable medical source" (20 CFR section 416.913(a)). Under 20 CFR section 416.927, only statements from acceptable medical sources can constitute medical opinions that are to be weighed against other medical assessments. Therefore, her opinion is given less weight, but I have considered it as an "other source" opinion. Although Ms. Crew has treated the claimant for an extended period of time, her opinion appears to amount to advocacy on her claimant's behalf as Ms. Crew's treatment notes consistently indicate that she questions whether the claimant exaggerates the nature and extent of her symptoms (see Exhibit 10F). Moreover, Ms. Crew stated that the claimant has had one or two periods of decompensation (Exhibit 12F, p. 4) but the record contains no objective evidence that supports this statement.

AR 19. Clearly, the ALJ is correct that Ms. Crew is not an "acceptable medical source." However, his conclusion that her opinion cannot, therefore, "be weighed against other medical assessments" is simply wrong. A licensed clinical social worker is an "other" medical source whose opinion must be considered. *See* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Indeed:

> [D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Id.* Thus, the Social Security Administration has expressly contemplated that, under certain circumstances, the opinion of an "other" medical source may actually carry more weight than that of a treating source. The ALJ's conclusion that Ms. Crew's opinion cannot "be weighed against other medical assessments" was erroneous.

The ALJ's other stated reasons for discrediting Ms. Crew's opinion do not fare much better. He characterized the opinion as "advocacy," stating that "Ms. Crew's treatment notes consistently indicate that she questions whether the claimant exaggerates the nature and extent of her symptoms (*see* Exhibit 10F)." AR 19. Exhibit 10F consists of 67 pages. AR 346-412. Other than generally referencing the entire exhibit, the ALJ offered no support for his conclusion that Ms. Crew's treatment notes "consistently indicate" concerns that Rozeboom is exaggerating her symptoms.

In her brief, the Commissioner makes an attempt to read the ALJ's mind by citing three treatment notes that supposedly contain comments making it "reasonable for the ALJ to conclude that the therapist had difficulty with some of plaintiff's statements." Doc. No. 12 at 14 (citing AR 350, 354, 357). However, the Commissioner does not specify which of the many comments contained on each cited page arguably support such a conclusion. Even a minimal level of specificity would have been helpful because after carefully reviewing all three pages, I find no such comments in any of Ms. Crew's notes. Quite honestly, I have no idea what the ALJ was talking about when he stated that Ms. Crew's treatment notes "consistently indicate" concerns that Rozeboom exaggerated her symptoms. While the ALJ may have concluded that Rozeboom exaggerated her symptoms based on an inconsistency between the activities described in Ms. Crew's treatment notes and Rozeboom's claimed symptoms of not wanting to leave the house and interact with others, that would be a reason to discredit Rozeboom, not Ms. Crew. Ms. Crew did not comment about any apparent inconsistencies or otherwise indicate she suspected Rozeboom of exaggerating her symptoms. I can only conclude that the ALJ's rejection of Ms. Crew's opinion on grounds of "advocacy" is baseless.

Finally, the ALJ was critical of Ms. Crew for stating that Rozeboom experienced one or two periods of decompensation when, in fact, the record contains no evidence supporting that statement. AR 19 (citing AR 425). Ms. Crew was responding to a questionnaire item that asked whether Rozeboom had any "Past Episodes of Deterioration or Decompensation in Work or Work-Like Settings Which Cause the Individual to

Withdraw from that Situation or to Experience Exacerbation of Signs and Symptoms (which may include deterioration of adaptive behaviors)." AR 425. This is similar to the Commissioner's definition, which states that "episodes of decompensation" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(4). According to the Commissioner, these may be demonstrated by "an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* They can be inferred from a significant alteration in medication, hospitalizations, placement in a halfway house, or any other evidence showing severity and duration of the episode. *Id.*

For purposes of the Commissioner's Listings, an episode of decompensation normally must be "of extended duration," meaning that it lasted for "at least 2 weeks." *Id.* However, the questionnaire did not ask Ms. Crew to report whether Rozeboom had episodes of decompensation *of extended duration*. It simply inquired as to whether she had experienced any such episodes. AR 425. As Rozeboom notes, the record reflects multiple instances in which Rozeboom suffered exacerbations or increased symptoms that could constitute episodes of decompensation. Doc. No. 11 at 16 (citing AR 275-80, 289, 292, 294, 316, 328, 330, 332, 334, 336). Ms. Crew's conclusion that Rozeboom suffered one or two such episodes is not so clearly and obviously contrary to the medical evidence as to constitute a good reason for discrediting her opinion. Thus, none of the three reasons the ALJ provided for affording little weight to that opinion is a good reason. The ALJ's evaluation of Ms. Crew's opinion is not supported by substantial evidence.

Having discredited Ms. Crew's opinion, the ALJ determined that the opinions of the state agency consultants were entitled to "some" weight. AR 19. However, he rejected their opinions to the extent they imposed limitations "in understanding, remembering, and carrying out instructions, or with respect to concentration." *Id.* He

stated that his own review of the medical evidence (presumably the same medical evidence reviewed by the consultants) failed to disclose a "persuasive basis" for those limitations. *Id.*

As for Dr. McLeod, the psychologist who evaluated Rozeboom, the ALJ's only acknowledgement of his report was to state that "it is noteworthy that the claimant's Minnesota Multiphasic Personality Inventory responses were of questionable validity." *Id.* The ALJ made no mention of Dr. McLeod's other findings, nor did he state what weight, if any, he gave to those findings. This is understandable to some degree, as Dr. McLeod did not make direct findings as to Rozeboom's RFC. That is, he did not offer specific conclusions as to Rozeboom's ability to function in the workplace. Nonetheless, his report does include diagnoses suggesting that Rozeboom has mental impairments resulting in some functional limitations. AR 286-87.

Finally, as noted above, the ALJ made no reference to Dr. Gillette, a treating source who saw Rozeboom repeatedly, or to his treatment notes. The Commissioner's regulations provide that treating physicians will be contacted by the Commissioner when the medical evidence received from them is inadequate to determine a claimant's disability. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing 20 C.F.R. § 416.912(e)). Here, there is no indication in the record that the ALJ made any effort to obtain an opinion from Dr. Gillette. Instead, the ALJ formulated Rozeboom's RFC after (a) giving little weight to Ms. Crew's opinion, (b) affording only some weight to the opinions of the agency consultants and (c) failing to acknowledge that Dr. Gillette exists. Even if Dr. Gillette declined to provide a medical opinion and the ALJ found the medical evidence "allow[ed] for an understanding of how [Rozeboom's] limitations function in a work environment," the ALJ was required to explain how the medical evidence supported his conclusions. *See Figgins v. Colvin*, No. C13-3022-MWB, 2014 WL 1686821, at *9-10 (N.D. Iowa Apr. 29, 2014) (quoting *Cox v. Astrue*, 495 F.3d 614, 620 n.6 (8th Cir. 2007)); SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion,

citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)).

Frankly, it is not at all clear what the ALJ's RFC determination was actually based upon. The law is clear that "[a]n ALJ must not substitute his opinions for those of the physician,"[4] yet that appears to be exactly what the ALJ did in this case. He rejected Ms. Crew's opinion for invalid reasons and discounted the opinions of two acceptable medical sources (the agency consultants) because his own analysis of the medical evidence differed from theirs. He then formulated the RFC without the benefit of an opinion from an acceptable medical source who ever treated or examined Rozeboom or, at least, an explanation as to how the medical evidence otherwise supports the RFC.

These circumstances compel remand, as the ALJ's RFC determination is not supported by substantial evidence in the record as a whole. The ALJ either (a) failed to fulfill his obligation to fully and fairly develop the record and improperly substituted his own opinions for those of medical sources or (b) failed to explain how the medical evidence supported his RFC determination. On remand, the ALJ must first determine whether the medical evidence is inadequate to determine Rozeboom's disability. If so, the ALJ shall (a) attempt to obtain an opinion from Dr. Gillette concerning Rozeboom's mental RFC, *see Cox*, 495 F.3d at 619, or, if that is not possible, (b) order a consultative examination. 20 C.F.R. § 416.912(e). The ALJ must then re-weigh all of the medical opinions and provide good reasons, supported by substantial evidence in the record, for the weight given to each. He shall then reconsider his RFC determination and, based on that determination, reach a conclusion as to whether Rozeboom is disabled within the meaning of the Act.

If the ALJ determines on remand that the medical evidence in the record *is* adequate to determine if Rozeboom is disabled (meaning it describes Rozeboom's "functional limitations with sufficient generalized clarity to allow for an understanding

---

[4] *Finch*, 547 F.3d at 938 (quoting *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990)).

of how those limitations function in a work environment"), then he must explain how that evidence supports the RFC determination. *See Cox*, 495 F.3d at 620 n.6; SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)).

### 2. *The Third Party Statement*

The ALJ discounted a third party statement provided by Rozeboom's husband, Scott Rozeboom. AR 20. Mr. Rozeboom's statement included various observations about Rozeboom's daily activities, abilities and limitations. AR 208-15. The ALJ rejected the statement on grounds that (1) Mr. Rozeboom has a financial interest in the outcome of the case and (2) "he was only able to report on his observations of the claimant, which may not be reflective of her maximal capabilities." AR 20.

I have already found that remand is necessary for further development of the record or explanation of the RFC determination. On remand, the ALJ shall reconsider his assessment of Mr. Rozeboom's statement. Clearly, it is permissible to discount a third-party statement based on the individual's financial interest in the case. *See, e.g., Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) ("Corroborating testimony of an individual living with a claimant may be discounted by the ALJ, as that person has a financial interest in the outcome of the case."). Nonetheless, if the ALJ determines that additional medical opinion evidence is necessary, and finds it consistent with Mr. Rozeboom's statement, the ALJ may conclude that the statement is entitled to greater weight.

### B. *Is Rozeboom Entitled to an Immediate Award of Benefits?*

Rozeboom argues that remand is not necessary, and that she should simply be awarded benefits, because the record clearly demonstrates that she is disabled within the

meaning of the Act. Doc. No. 11 at 18-20. I disagree. While there is no doubt that the ALJ erred in failing to fully develop the record or explain the basis for his RFC determination, those errors do not entitle Rozeboom to a finding that she is disabled. The court may enter an immediate finding of disability only if the record "overwhelmingly supports" such a finding, otherwise, the case is remanded for further administrative proceedings. *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000); *see also Benskin v. Bowen*, 830 F.2d 878, 885 n.2 (8th Cir. 1987) ("Usually, when the Secretary errs at a stage in the determination at which the burden is still on the claimant to prove she is entitled to benefits, the proper relief is to remand to the Secretary so he can resume consideration of the claim."). The record here does not "overwhelmingly support" a finding of disability. As such, remand is appropriate.

## VI. CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the Commissioner's determination that Rozeboom was not disabled be **reversed and remanded** for further proceedings and that judgment be entered against the Commissioner and in favor of Rozeboom. On remand, the ALJ must either (a) fully and fairly develop the record by obtaining additional medical opinion evidence concerning Rozeboom's mental impairments or (b) explain how the existing medical evidence supports his RFC determination.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal

from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 23rd day of July, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE