# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| AMY ANN ROZEBOOM,<br><br>        Plaintiff,<br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | No. C13-4116-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING REPORT AND RECOMMENDATION** |

        This case is before me on a Report and Recommendation (R & R) from Judge Leonard Strand, filed on July 23, 2014 (docket no. 15). In the R & R, Judge Strand recommends that I reverse a decision by the Commissioner of Social Security (the Commissioner) denying Plaintiff Amy Ann Rozeboom (Rozeboom) Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. 401 *et seq.*, and that I remand the case for further proceedings. More specifically, Judge Strand recommends the following: "On remand, the ALJ must either (a) fully and fairly develop the record by obtaining additional medical opinion evidence concerning Rozeboom's mental impairments or (b) explain how the existing medical evidence supports his RFC determination." Report at 22. Neither party has filed objections to the R & R. The 14-day window in which parties may file objections is now closed. 28 U.S.C. 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).

        In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). Because the parties filed no objections, they have waived their right for me to review the R & R *de novo* and their right to appeal from

Judge Strand's findings of fact. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009). Therefore, I review Judge Strand's R & R under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error."); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). The United States Supreme Court has explained that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

While I examine Judge Strand's R & R for clear error, I also review the Commissioner's decision to determine whether the correct legal standards were applied and "whether the Commissioner's findings are supported by substantial evidence in the record as a whole." *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (quoting *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999)). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Page*, 484 F.3d at 1042. In reviewing the Commissioner's denial of benefits to determine if it is supported by substantial evidence, the court must "not only . . . consider evidence in the record that supports the Commissioner's determination, but also any evidence that detracts from that conclusion." *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (citing *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001)). Nonetheless, even if a court "might

have reached a different conclusion had [it] been the initial finder of fact," the Commissioner's decision will not be disturbed "unless the record contains insufficient evidence to support the outcome." *See Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citations omitted).

Having independently reviewed the 427 pages of Rozeboom's record, the ALJ's decision, the parties' briefs, and Judge Strand's well-written and persuasive 23-page R & R, I find no clear error. Rozeboom raises three arguments in making the case that the ALJ's decision that she was not disabled was not supported by substantial evidence.[1] Report at 7. I find that the ALJ's RFC determination is *not* supported by substantial evidence in the record as a whole, and, therefore, remand is mandated. *Id*. at 20, 22. As indicated by Judge Strand's R & R, remand is necessary for several reasons.

First, the ALJ's explanations for affording "little weight" to the opinion of Ms. Jennifer Crew, a licensed clinical social worker and Rozeboom's treating mental health therapist,[2] are unavailing. Tr. 19. Judge Strand rightly criticizes the ALJ's assertion

---

[1] Judge Strand lists Rozeboom's three contentions in his R & R: (1) the ALJ erred by giving little or no weight to the treating source opinions, examining source opinions, the state agency opinions, and the third party statement, without giving good reasons; (2) the ALJ erred by relying on his own perceived medical expertise to evaluate medical issues that are best left to medical experts; and (3) the record overwhelmingly demonstrates that plaintiff is disabled. Report at 7. Judge Strand analyzed the first two arguments together, and separately addressed the third argument. *Id*. at 7, 21–22. I, too, am convinced by Rozeboom's first two arguments that the ALJ erred, but I reject her third argument as the record does not "overwhelmingly support" a finding of disability. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (noting that a court "may enter an immediate finding of disability only if the record 'overwhelmingly supports' such a finding" (citing *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992))).

[2] As noted in Rozeboom's brief, "During most of [the period from January 3, 2011 to the ALJ's denial date of September 28, 2012] [Rozeboom] was seen by Ms. Crew weekly, and for some of that period she saw her once each two weeks, and all sessions were for periods of 50-55 minutes duration." Plaintiff's Brief (docket no. 11), 13.

that "only statements from acceptable medical sources can constitute medical opinions that are to be weighed against other medical assessments." *Id.* Judge Strand makes the ALJ's error clear by quoting a social security ruling with the purpose of clarifying "how we consider opinions from sources who are not 'acceptable medical sources'":

> [D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

Report at 16 (quoting SSR 06-03p, 2006 WL 2329939 (Aug. 9 2006)). The record consists of numerous meetings between Ms. Crew and Rozeboom and thorough assessments by Ms. Crew.[3] *See, e.g.,* Tr. 346, 348–352, 354–57, 361–63, 370–73, 377–83, 387–94, 398–409, 422–28. Thus, the ALJ misapplied the Social Security regulations by not recognizing that Ms. Crew's opinion *can* be weighed against other medical assessments.

In addition, without specific references to comments in Ms. Crew's treatment notes, the ALJ's characterization of Ms. Crew's opinion as "advocacy" fails. Report at

---

[3] As provided in the record, and even noted by the ALJ in his opinion, Ms. Crew wrote that "I do not recommend [Rozeboom] work outside her home due to her present condition." Tr. 19, 285. Ms. Crew also noted that Rozeboom would miss work about four days per month. *Id.* at 425. On January 21, 2011, Ms. Crew provided that Rozeboom "suffers from Panic Disorder and Mood Disorder." *Id.* at 285. On May 26, 2011, Ms. Crew indicated that she continued to treat Rozeboom, who was diagnosed with "Bipolar Disorder, Type II, most recent episode mixed mania and depression; Attention Deficit Hyperactivity Disorder, Combined Type; and Dysthymic Disorder." *Id.* at 315.

17. The ALJ's conclusion that Ms. Crew erred in stating that Rozeboom suffered from one or two periods of decompensation is also unpersuasive. This is because, as Rozeboom points out, "the record reflects multiple instances in which Rozeboom suffered exacerbations or increased symptoms that could constitute episodes of decompensation." *Id.* at 18. In sum, the ALJ's reasons for giving "little weight" to Ms. Crew's assessments are mistaken. In the words of Judge Strand, "The ALJ's evaluation of Ms. Crew's opinion is not supported by substantial evidence." *Id.*

Second, the ALJ discounted the opinions of state agency medical consultants, Aaron Quinn, Ph.D., and Myrna Tashner, Ed.D., by giving their opinions "some weight" without sufficient explanation. Tr. 19, 313–14, 345. Ultimately, the ALJ rejected the consultants' opinions because, according to the ALJ, "the record does not provide persuasive basis for assessing limitations in understanding, remembering, and carrying out instructions or with respect to concentration." *Id.* at 19. Judge Strand's opinion directs the ALJ to Dr. McLeod's evaluation of Rozeboom, in which Dr. McLeod's diagnoses of Rozeboom "suggest[ ] that [she] has mental impairments resulting in some functional limitations." Report at 19 (citing Tr. 286–87). The ALJ only briefly acknowledged one report by Dr. McLeod: "[I]t is noteworthy that the claimant's Minnesota Multiphasic Personality Inventory responses were of questionable validity (Exhibit 2F, p. 2)." Tr. 19. However, the subsequent sentences in Dr. McLeod's report—those sentences not referred to by the ALJ—suggest that Rozeboom does suffer from serious mental impairments that limit her capabilities.[4]

---

[4] "[S]ome impressionistic findings of this instrument do indicate she is an individual who draws very heavily upon repression and denial and probably does have something of a masked depression together with severe anxiety. She is reporting feeling quite overwhelmed by anxiety, tension and depression at times. Frequently she reports feeling

5

Furthermore, Judge Strand correctly takes issue with the ALJ's decision to discount the opinions of the state agency consultants as "[the ALJ's] own analysis of the medical evidence differed from theirs." Report at 20. Put differently, instead of giving credit to the opinions of the state agency medical consultants, the ALJ seemed to substitute his own unsubstantiated conclusions regarding Rozeboom's mental health. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)) ("An 'ALJ must not substitute his opinions for those of the physician.'" (quoting *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990))); *see also Pratt v. Sullivan*, 956 F.2d 830, 834 (8th Cir. 1992) (*per curiam*) (finding ALJ committed reversible error because "[i]nstead of crediting the opinions of the mental health professionals, the ALJ substituted his own unsubstantiated conclusion concerning a mental impairment for the express diagnoses of [the claimant's] examining psychiatrists and psychologists.").

Third, the ALJ did not refer to Dr. Daniel Gillette, one of Rozeboom's treating sources, or Dr. Gillette's treatment notes in the record. Report at 19. No explanation is provided as to why Dr. Gillette's notes are ignored. This is surprising given the fact that, as Judge Strand highlights, Rozeboom's record consists of "more than twenty visits" with Dr. Gillette between January 27, 2011 and June 21, 2012. *Id.* at 13; *see also* Tr. 19, 288–95, 316–44, 347, 353, 358–60, 364–69, 374–76, 384–86, 395–97, 410–12. The ALJ also specifically referred to Dr. Gillette at the ALJ's hearing on September 13, 2012.[5] Tr. 50. Overall, the ALJ did not adequately "explain how the medical evidence

---

helpless and alone. She attempts to control her fears through excessive intellectualization. Difficulties with concentrating and making decisions appear to be personality traits with this general emotional makeup. Frequently individuals with this profile have a rather disorganized and unhappy lifestyle and function with low efficiency." Tr. 286.

[5] Here is the relevant dialogue between the ALJ and Rozeboom regarding Dr. Gillette:

6

supported his conclusions." *Id.* at 19; *see also Figgins v. Colvin*, No. C13-3022-MWB, 2014 WL 1686821, *9–*10 (N.D. Iowa Apr. 29, 2014); SSR 96-8P, 1996 WL 374184, *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)).

For the foregoing reasons, in agreement with Judge Strand, I find that the ALJ in this case "either (a) failed to fulfill his obligation to fully and fairly develop the record and improperly substituted his own opinions for those of medical sources or (b) failed to explain how the medical evidence supported his RFC determination." Report at 20; *see also McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."); *Nevland v. Apfel*, 204 F.3d 853, 857–58 (8th Cir. 2000) (discussing the ALJ's duty to fully and fairly develop the record regarding a claimant's residual functional capacity). To correct the ALJ's errors on remand, I order in

---

    Q. Now -- so Dr. Gillette restarted you on the medication Friday, correct?

    A. Yes.

    Q. What did he say to you about going off the meds?

    A. He told me I was playing Russian roulette.

    Q. Did you feel any withdrawal symptoms?

    A. Yeah.

Tr. 50.

accordance with Judge Strand's R & R that "the ALJ must either (a) fully and fairly develop the record by obtaining additional medical opinion evidence concerning Rozeboom's mental impairments or (b) explain how the existing medical evidence supports his RFC determination."[6]  Report at 22.  The Commissioner's decision is reversed and this case is remanded for further proceedings consistent with Judge Strand's R & R.  The Clerk of Court shall enter judgment against the Commissioner and in favor of Rozeboom.

**IT IS SO ORDERED**.

**DATED** this 2nd day of February, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

---

[6] If the ALJ decides that the record requires additional medical evidence to determine whether Rozeboom is disabled, and that evidence is consistent with Scott Rozeboom's statement, then "the ALJ may conclude that the statement is entitled to greater weight." Report at 21.  The statement by Scott Rozeboom, Rozeboom's former husband, consists of "various observations about Rozeboom's daily activities, abilities and limitations." *Id.*